UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONICA CARRILLO<br><br>**Plaintiff,**<br><br>v.<br><br>**EMPIRE HOTEL SERVICES LLC D/B/A CANOPY BY HILTON JERSEY CITY ARTS DISTRICT, and RICHARD FOSTER, in his individual capacity,**<br><br>**Defendants.** | Civ. No.2:22-CV-03273 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.**

Before the Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion") filed by Defendants Empire Hotel Services LLC d/b/a Canopy by Hilton Jersey City Arts District ("Empire") and Richard Foster ("Foster" or together with Empire, "Defendants"). ECF No. 16. This opinion is issued without oral argument. Fed. R. Civ. P. 78(b). After careful consideration of the parties' submissions and for the reasons set forth below, Defendants' Motion is **DENIED.**

**I.   BACKGROUND[1]**

Plaintiff Monica Carrillo ("Plaintiff" or "Carrillo") started working as a housekeeper at Empire on or around August 13, 2020 after Foster's wife contacted her through Indeed.[2] Amended Complaint ("Am. Compl.") ¶¶ 15-16. Foster was Empire's Chief Operating Officer. Am. Compl. ¶ 17. Carrillo reported to Foster daily, and Foster trained Carrillo in anti-harassment procedures. Am. Compl. ¶¶ 17-18. Carrillo alleges that throughout her employment, Foster regularly made derogatory remarks to her. Carrillo asserts that Foster told her she "look[s] gorgeous" and that she was "short like [his] wife, but [had] a different body type." Am. Compl. ¶¶ 19, 26. She alleges that Foster would come into small spaces where she was working, watch her from behind, and get unnecessarily close to her such that she had to step back out of fear that he would grope her. Am. Compl. ¶ 22. When this happened, Carrillo would tell him, "[y]ou shouldn't be here," meaning that

---
[1] The following facts, taken from the Amended Complaint, are accepted as true for the purpose of this Opinion. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).
[2] The Court takes judicial notice that Indeed is an employment website found at https://www.indeed.com/.

he should move away from her, because she was concerned that he would lock the door from behind and trap her in the small space. Am. Compl. ¶ 22. On a day that Carrillo was cleaning showers in the hotel rooms, Foster allegedly came into the small bathroom and said to her, "[y]ou know women don't go in the shower with clothes on," which Carrillo understood to be a sexual proposition that she remove her clothing. Am. Compl. ¶ 23. Carrillo also alleges that when she was bending over to clean, Foster approached her from behind and said, "the way you bend over . . . , you look sexy." Comp. ¶ 25. Carrillo also alleges that Foster would regularly call Carrillo a "bitch" both when they were alone and when they were in front of her co-workers, Am. Compl. ¶ 20, and that he also called his wife and another of Carrillo's co-workers a "bitch" as well, Am. Compl. ¶ 21.

Carrillo asserts that she complained to Foster multiple times about his purported harassment and discrimination and regularly asked him to stop. Am. Compl. ¶ 27. However, the harassment persisted. Am. Compl. ¶ 28. In August or September 2020, Carrillo complained to Empire's Human Resources department about the alleged incidents but received no response. Am. Compl. ¶ 29. In September 2020, Carrillo saw that she was not scheduled for any upcoming shifts. Am. Compl. ¶ 30. She contacted Empire about her lack of scheduled shifts and to reiterate her complaint that she was being regularly harassed by Foster. Am. Compl. ¶ 30. In response to her contacting Empire, Foster called Carrillo and left a voicemail stating that she had been terminated due to a lack of work and for lying on her job application. Am. Compl. ¶ 31. Carrillo had not received any write-up or complaint from Empire before her termination. Am. Compl. ¶ 32.

## II.     PROCEDURAL HISTORY

After receiving a Right to Sue Letter from the Equal Employment Opportunity Commission on or around April 18, 2022 and exhausting her administrative duties, Am. Compl. ¶¶ 6-7, Carrillo filed the present action on May 31, 2022, ECF No. 1. After several extensions of the response deadline, Defendants moved to dismiss the Complaint on January 10, 2023. ECF No. 14. On February 3, 2023, Carrillo filed an amended complaint asserting discrimination and retaliation claims against Empire under Title VII and discrimination claims against both Empire and Foster under the New Jersey Law Against Discrimination ("NJLAD"). Am. Compl. ¶¶ 36-48. On February 24, 2023, Defendants moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Motion, ECF No. 16. Carrillo filed a late opposition brief on March 20, 2023.[3] Opposition Brief ("Opp. Br."), ECF No. 17. Defendants did not file a reply.

## III.     LEGAL STANDARD

---

[3] The Court notes the slow progress of this case. It is expected that going forward, the parties will submit their filings in a timely manner and will expeditiously move this case forward.

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotation marks omitted). The complaint's factual allegations need not be detailed, but they must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). This facial-plausibility standard is met where the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## IV.   DISCUSSION

Defendants argue that all of Carrillo's claims should be dismissed because (1) the alleged behavior by Foster was not severe or pervasive; (2) Carrillo fails to plead a cause of action for discrimination; and (3) Carrillo was not retaliated against in her firing. Moving Brief ("Mov. Br.") 3-5, ECF No. 16.

### A.  Sexual Harassment Claims

Defendants argue that Carrillo's sexual harassment claims under Title VII and the NJLAD fail because the alleged conduct is not severe or pervasive enough to rise to the level of actionable harassment. Mov. Br. 3-4. Defendants also argue that Carrillo "has merely alleged that comments were made, but has failed to allege facts that show that her termination was motivated in any way by her sex or that there is any causal connection between the alleged comments and her termination." Mov. Br. 4.

"Sexual harassment is a form of sex discrimination that violates both Title VII and the LAD." *Lehmann v. Toys R Us, Inc.*, 626 A.2d 445, 452 (N.J. 1993). "As a general matter, the same basic principles apply when evaluating Plaintiff's claims under these two statutes." *Hargrave v. Cnty. of Atl.*, 262 F. Supp. 2d 393, 410 (D.N.J. 2003). Sexual harassment cases are generally divided into two categories: (1) "Quid pro quo" sexual harassment and (2) "hostile work environment" sexual harassment. *Lehmann*, 626 A.2d at 452. The Court finds that Carrillo's complaint adequately states a claim for sexual harassment under both theories.

#### 1. Hostile Work Environment

To state a claim for hostile work environment sexual harassment, a plaintiff must allege: "1) [that] the employee suffered intentional discrimination because of [her] sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017); *see also Lehmann*, 626 A.2d at 453-54 (stating elements under the NJLAD). "The 'severe or pervasive' standard requires conduct that is sufficient 'to alter the conditions of [the employee's] employment and create an abusive working environment.'" *Moody*, 870 F.3d at 214 (alteration in original) (citation omitted) (analyzing hostile work environment claim under both Title VII and the NJLAD).

As an initial matter, for hostile work environment claims, "the harassing conduct need not be sexual in nature; rather, its defining characteristic is that the harassment occurs because of the victim's sex." *Lehmann*, 626 A.2d at 453. As such, Defendants' argument that comments must contain explicit sexual innuendo to be considered in support of a hostile work environment claim, Mov. Br. 4, is of no moment. However, despite Defendants' assertions, Carrillo's allegations that Foster used the term "bitch" to describe her, commented on Carrillo's body and appearance, commented on whether women wear clothes in the shower, approached Carrillo from behind, and inserted himself into small spaces with Carrillo, *are* sexual or sexist in nature. As such, Carrillo has pleaded facts to satisfy the first element of a hostile work environment claim: that she was harassed "because of [her] sex." *Moody*, 870 F.3d at 214 (comments about plaintiff's body establish that harassment occurred because of her sex); *Lehmann*, 626 A.2d at 454 ("When the harassing conduct is sexual or sexist in nature, the but-for element will automatically be satisfied. Thus when a plaintiff alleges that she has been subjected to sexual touchings or comments . . . she has established that the harassment occurred because of her sex.").

Carrillo also sufficiently alleges that the discrimination was pervasive. Carrillo claims that Foster was "sexually inappropriate with Plaintiff almost immediately after she started," that the harassment occurred "regularly," and that the harassment persisted even after she asked Foster to stop. Compl. ¶¶ 18, 19, 27-28. The large number of specific comments alleged within the short timeframe of Carrillo's employment also suggests pervasiveness. Compl. ¶¶ 19, 20, 23, 25, 26.

Further, Carrillo alleges facts suggesting that Foster's conduct not only detrimentally affected her, but would also detrimentally affect a reasonable person in like circumstances. Carrillo states that Foster's comments on her body made her feel objectified and humiliated, Compl. ¶ 26, and that he made her feel trapped and at risk of being groped when he inserted himself into small spaces while she was working in them, Compl. ¶ 22. A reasonable person could also find that Foster's comments on Carrillo's body and his reference to her as a "bitch" were humiliating and offensive, respectively, and that his conduct was physically threatening to the extent he inserted himself into small spaces where she was working. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) (factors to

4

consider when reviewing the circumstances for a hostile work environment claim include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance).

Lastly, by asserting that Foster was Carrillo's supervisor, Carrillo has alleged the existence of *respondeat superior* liability.[4] *See In Re Tribune Media Co.*, 902 F.3d 384, 399 (3d Cir. 2018) ("Employers are strictly liable for a supervisor's actions '[i]f the supervisor's harassment culminates in a tangible employment action.'" (citation omitted)). As such, Carrillo's complaint adequately pleads hostile work environment sexual harassment under both Title VII and the NJLAD.

### 2. Quid Pro Quo

"Unwanted sexual advances can constitute *quid pro quo* sexual harassment when 'submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment' or 'submission to or rejection of such conduct by an individual is used as the basis for employment decisions.'" *Tillett v. AutoZoners, LLC*, No. CV 17-7952 (JLL), 2018 WL 1156229, at *4 (D.N.J. Mar. 5, 2018) (first quoting *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 27 (3d Cir. 1997); and then citing *Lehmann*, 626 A.2d at 452 (applying a similar description under the NJLAD)).

As discussed *supra*, Foster is alleged to have made sexual advances towards Carrillo by, among other things, commenting on her body and appearance, approaching her from behind, and inserting himself into small spaces where she was working. Carrillo then rejected the unwanted advances by asking Foster to stop and by reporting the conduct to Empire's Human Resources department. Carrillo then pleads that her rejection of Foster's advances was used as the basis for her termination less than a month later. Am. Compl. ¶ 31. As such, Carrillo's complaint sufficiently pleads quid pro quo sexual harassment under both Title VII and the NJLAD.

### B. Retaliation

Defendants also argue that Carrillo's retaliation claim should be dismissed because "[t]here is no indication that Mr. Foster was even aware of any alleged complaint [by

---

[4] Because Foster is alleged to have been Carrillo's supervisor, Carrillo's complaint also adequately pleads an aiding and abetting claim against Foster individually under the NJLAD. *Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001) ("[A] supervisor's violation of [its] duty [to act against harassment] by either deliberate indifference or affirmative harassment subjects the supervisor to LAD liability.").

Carrillo to Empire's Human Resources department], and a month had passed since the alleged complaint and Plaintiff's firing." Mov. Br. 5.[5]

"[A] plaintiff alleging retaliation under Title VII must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Kumar v. New Jersey*, No. CV 20-13927 (FLW), 2021 WL 3769280, at *10 (D.N.J. Aug. 25, 2021) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007)). The first two elements are sufficiently pleaded. Carrillo engaged in a protected activity by complaining to Empire's Human Resources department. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015) (holding that protected activity for purposes of a *prima facie* case of retaliation includes informal protests of discriminatory employment practices). She also suffered an adverse employment action by being terminated. *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 288 (3d Cir. 2001) (noting that termination of employment is an "obvious adverse employment action"). Regarding the third element, the close temporal proximity between Carrillo's complaint to the Human Resources department and her termination at most one month later is sufficient to allege a causal connection, even without directly pleading that Foster knew about her complaint. *Moody*, 870 F.3d at 221 ("An inference of 'unduly suggestive' temporal proximity begins to dissipate where there is a gap of three months or more between the protected activity and the adverse action."). As such, Carrillo's complaint adequately pleads a retaliation claim against Empire under Title VII.

## V.   CONCLUSION

For the reasons set forth above, Defendants' Motion, ECF No. 16, is **DENIED**.

An appropriate Order accompanies this Opinion.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date:  June 14, 2023**

---

[5] Defendants also argue that Carrillo was fired for her poor work ethic and for lying on her resume. Mov. Br. 5. Carrillo argues that these reasons are pretextual. Opp. Br. 10. Whether Defendants' asserted reasons for her termination are pretextual is not a question to be determined at this stage. *Cf. Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787, 791 (3d Cir. 2016).